IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LANCE GERARD BIAGAS,               §
                                   §
            Petitioner,            §
                                   §
v.                                 §       CIVIL ACTION NO. 4:06-CV-0668
                                   §
KIM VALENTINE, Interim Director,   §
Harris County Department of        §
Community Supervision and Corrections, §
                                   §
            Respondent.            §

## MEMORANDUM AND ORDER

Lance Biagas has petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2254 (2000), claiming that his state court trial and conviction for theft violated his constitutional rights to an impartial jury and to effective assistance of counsel. The respondent, Kim Valentine, answered and moved for summary judgment. After considering the petition, answer, reply, and the governing law, and for the reasons stated below, the Court has determined that the petition should be granted and the respondent's motion should be denied. The Court has further determined that the petition has merit, that the writ should be issued, and that Biagas must be given a new trial or else released from custody.

## I.

Victor Gamboa, who sat on the jury that convicted Biagas, was a Harris County Sheriff's Deputy. Harris County was the victim, and the investigators, prosecutors, and two of the witnesses in the case were all Harris County employees engaged in the

practice of law enforcement.  Indeed, this case arose out of a larger investigation of a Harris County Constable.  During voir dire, Gamboa stated that he would always believe the testimony of a fellow law enforcement officer over any other evidence.  Biagas' trial attorney, Reginald McKamie ("counsel"), challenged or struck other veniremen who had expressed similar tendencies, but never challenged or struck Gamboa.  When Gamboa was selected for the petit jury, counsel objected and explained that he (counsel) mistakenly believed that Gamboa had previously been excused by agreement.  The trial judge refused to grant any relief.  The jury, including Gamboa, convicted Biagas of felony theft and the trial judge sentenced him to five years of probation.

Biagas retained a new attorney and filed a timely motion for a new trial.  In his post-trial motion, Biagas argued that Gamboa was a biased juror and that counsel was ineffective because he did not challenge Gamboa before he was selected.  The trial court denied the motion, and the Texas Court of Appeals affirmed the judgment of conviction, the sentence, and the denial of Biagas' post-trial motion.  *See Biagas v. State*, 177 S.W.3d 161, 166 (Tex.App.–Houston [1st Dist.] 2005, pet. denied, reh'g denied).  The Texas Court of Criminal Appeals denied Biagas' petition for discretionary review.

In the present petition, Biagas argues that he is entitled to habeas relief because he is in custody in violation of the federal Constitution.  Specifically, he argues that his Sixth and Fourteenth amendment rights to an impartial jury and effective assistance of counsel were violated.  As Biagas frames the issues, counsel's ineffective assistance resulted in conviction by a biased jury.  The Court agrees, and further finds that the state court decision upholding Biagas' conviction cannot be sustained.

## II.

Biagas' petition is governed by 28 U.S.C. § 2254.  He has satisfied the threshold requirement of exhaustion of remedies because both his biased jury and ineffective assistance claims were pursued at the state court of appeals and his petition for discretionary review was denied by the Court of Criminal Appeals.  He was "in custody" at the time he filed this petition, and remains so today, because the state court sentenced him to two years confinement, conditionally probated for five years on June 5, 2003. *See*, *e.g.*, *Clark v. Prichard*, 812 F.2d 991, 998-99 (5th Cir. 1987) (Hill, J., concurring), and cases cited therein ("[A] person on probation and subject to conditions of probation is 'in custody' for purposes of the federal habeas corpus statute.").

This Court's inquiry is directed at the "decision" reached by the state court, that is, the "ultimate legal conclusion."  *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). Biagas is entitled to relief if that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).  In conducting this inquiry, the Court must presume that factual determinations made by the state courts are correct, and Biagas bears the burden of rebutting this presumption by clear and convincing evidence.  § 2254(e)(1). Even under this deferential standard of review, Biagas is entitled to relief.

## III.

### A.

Biagas was charged by indictment, tried, and convicted of a scheme to defraud Harris County.  His mother, Angela Holden, was employed in the office of Perry Wooten, who was at that time the Harris County Constable for Precinct 7.    "Holden assigned several of her relatives, including her son Biagas, to work at the constable's office as

employees of [an outside contractor called] A-Temps."  *Biagas*, 177 S.W.3d at 166. Based on the falsified time sheets, Harris County paid A-Temps, and A-Temps paid the employees.   "Biagas received A-Temps checks payable to him in the amount of $8,662.68 for time he had never worked.   He either cashed and spent the checks or deposited them in Holden's account at the Harris County Federal Credit Union."  *Id.*

**B.**

Biagas' claims arise out of a series of failues in the voir dire process.   First, counsel did not ensure that Gamboa was stricken despite clear indication of institutional and evidentiary bias.   Second, when counsel realized his error and alerted the trial court, the judge refused to correct the situation without any good reason.   The court did correct a similar error made by the court clerk, but at the very same moment denied Biagas the opportunity and ability to remedy counsel's initial mistake.   The venire panel was still present, and the jury had not been sworn.   Extensive discussion of and quotations from the record of voir dire have been provided for context.

Clearly, Biagas' trial attorney intended to identify and remove those veniremen who harbored a bias in favor of testimony from law enforcement officers.   When the jurors first assembled, the trial judge asked a few questions and gave initial admonitions about basic matters, like the presumption of innocence and the credibility of witnesses. The judge explained that under the law, no witness is entitled to more or less credibility merely because of their occupation, "And all of you are smart enough to know that there's no such thing as any race, religion, or occupation where everybody tells the truth or where nobody tells the truth.   You're going to have truth tellers and non-truth tellers in every walk of life."  Rept. R. vol 3, p. 7.

After the trial judge gave the initial instructions, each side was allowed up to forty-five minutes to questions the jurors.  The prosecution was the first to question Gamboa about his employment.  Near the end of her allotted time, the prosecutor asked the jurors whether they had visited someone in prison and whether that would affect their judgment in the case.  Gamboa stated that he had worked there, but that that would not affect him.

When Biagas' attorney began questioning the jurors, he explained the motivation for his questions:

> [P]eople come here with . . . different baggage.  That's what I call it, different baggage.  You know, we had a president, he didn't like broccoli. Now, if we had a trial that was dealing with broccoli, that president shouldn't be on that trial.  . . . And that's what we're looking at.  We don't want anybody on the jury that's come in with some preconceived notions or any baggage like broccoli.

3 Rept. R. at 55.  Counsel found plenty of "baggage and broccoli" when he questioned four jurors about whether they could impartially consider the testimony of law enforcement officers.  Gamboa was the first:

| [DEF'T COUNSEL]: | We talked about policemen.  There's going to be policemen that may testify.  We have one sheriff's deputy.  Are you a deputy? |
|---|---|
| [GAMBOA]: | Yes. |
| [DEF'T COUNSEL]: | Do you know [the prosecution's witness] Mr. McAnulty? |
| [GAMBOA]: | No. |
| [DEF'T COUNSEL]: | Okay.  Because you're a sheriff, do you think that all sheriffs or all policemen tell the truth all the time? |
| [GAMBOA]: | Yes. They made an oath. |
| [DEF'T COUNSEL]: | Made an oath? |

| | |
|---|---|
| [GAMBOA]: | (Moving head up and down) |
| [DEF'T COUNSEL]: | Okay.  So if - you wouldn't be able to believe that Mr. McAnulty would misrepresent anything? |
| [GAMBOA]: | No. |
| [DEF'T COUNSEL]: | Okay.  No matter what transpired?  So I would start a little behind if he's testifying against me?  I'd be at a disadvantage if he comes in here and says, Lance Biagas did X, Y, Z, you're going to believe him over Lance Biagas or anybody else that comes in and testifies? |
| [GAMBOA]: | I'm going to be partial. |
| [DEF'T COUNSEL]: | Well, and - - |
| [GAMBOA]: | I'm going to believe him. |
| [DEF'T COUNSEL]: | You're going to believe him? |
| [GAMBOA]: | (Moving head up and down) |
| [DEF'T COUNSEL]: | Okay.  So we start a little behind? And there's no right answer; there's no wrong answer; there's just broccoli.  If you believe the officer over somebody else, then that's fair.  I mean, that's just the way you are.  You're trained as a police officer and those are your friends and that's not a problem.  Okay.  So— and I thank you for being forthright in saying, yeah, you're going to believe Officer McAnulty.  That's not a problem.

Does anybody else believe like the deputy, that a police officer, his word is better than anybody else's Anybody else have that opinion? |

Rept. R. vol 3, p. 72.  Three other jurors responded affirmatively.  When one of the jurors said she agreed with Gamboa, the trial judge interrupted and tried to correct the jurors.  At that time, the judge said, "[I]f you really in your heart believe that [police officers are] entitled to more believability than any other person, *then you certainly should not sit on the jury.*"  *Id.* at 73 (emphasis added).

At the conclusion of counsel's questioning, he and the prosecutor approached the bench to discuss agreed-upon strikes

| | |
|---|---|
| [TRIAL COURT]: | Okay.  Let me get your agreements. |
| [PROSECUTOR]: | 2, 4, 42, 50, 13. |
| [TRIAL COURT]: | Which one? |
| [PROSECUTOR]: | 13. |
| [DEF'T COUNSEL]: | 13. |
| [PROSECUTOR]: | 13 and 19.  1, 9. |
| [TRIAL COURT]: | Is that it? Let me call them back to you to make sure. |
| [DEF'T COUNSEL]: | Excuse me, Your Honor? |
| [TRIAL COURT]: | Let me call - - is that all of them? |
| [DEF'T COUNSEL]: | That's what we agreed to. |

*Id.* at 80-81.  Gamboa's number, 38, was not included in this list.

The trial judge and the attorneys then moved into chambers, where individual jurors were called in for further questioning outside the presence of the others.  Counsel challenged jurors Krumlauf and Lemer, who had expressed bias or potential bias in favor of law enforcement testimony.  Gamboa was not called into chambers, and he was not challenged by either party.  The court granted the challenge of Krumlauf, but denied the challenge to Lemer after she stated that she would wait to hear a police officer's testimony to determine whether he was credible.  (The fourth juror had given a similar response during the open voir dire session; this juror was not identified by name or number during the initial questioning, so it is not clear from the record whether she was stricken by agreement or otherwise).

When the in-chambers voir dire was completed and the challenges for cause were resolved, the prosecution and defense turned in their jury lists indicating their peremptory strikes.   Counsel used one of his ten strikes on Lemer, but did not strike Gamboa. Though the court instructed the clerk to call the first twelve names and numbers that had not been stricken, the clerk actually called thirteen jurors into the box.  Deputy Gamboa was the twelfth of thirteen jurors impaneled.  Once the jurors came forward, but before anyone realized an extra juror had been chosen, the court asked whether counsel had any objection.

| | |
|---|---|
| [TRIAL COURT]: | Mr. McKamie, are you satisfied with the seating of the jury? |
| [PROSECUTOR]: | The State has no objection. |
| [DEF'T COUNSEL]: | May we approach, Your Honor? |
| | (Bench conference) |
| | … |
| [DEF'T COUNSEL]: | Your Honor, there was an oversight.   I thought [juror number] 38 [Gamboa] had been stricken for cause. |
| [TRIAL COURT]: | Who? |
| [DEF'T COUNSEL]: | 38.  He's a police officer.  He testified that he would have police officers ahead of anybody else; and I thought he had been stricken for cause, Your Honor. |
| [TRIAL COURT]: | I'm sorry.  I can't - - I can't do anything about it. |
| [BAILIFF]: | We have 13 jurors. |
| [DEF'T COUNSEL]: | Excuse me? |
| [BAILIFF]: | You got 13 jurors. |
| [DEF'T COUNSEL]: | How did we get 13? |
| | There's 13, there's a problem. |

[TRIAL COURT]:      You called too many jurors.  You called 13.

*Id.* at 95-96.  At that point, the trial court and the clerk set about trying to determine

which jurors should have been called.  The clerk called out the selected jurors a second

time, and this time there were only twelve.  One of the jurors originally selected spoke

up.

[ESTES]:            You called me the first time, 21, Gerald Estes.

[CLERK]:            No, I didn't cal - - Oh, I did? I apologize.

[ESTES]:            That's Okay.

    (Laughing)

[TRIAL COURT]:      No.  Wait a minute.  Maybe he's one of the one[s]
                    that's supposed to be on there.

[BAILIFF]:          Hold on a minute.

[PROSECUTOR]:       Don't leave just yet.

[ESTES]:            Okay.

[TRIAL COURT]:      Go ahead if you're supposed to be on there.

                    Number 21 was called the first time.  Mr. Estes,
                    right?

[CLERK]:            Judge, let me just go through them again to make
                    sure I have the first 12.

[DEF'T COUNSEL]:    Your Honor, I think because of the confusion, I
                    would call for a mistrial.

[TRIAL COURT]:      That will be overruled.

[DEF'T COUNSEL]:    All right.

    (pause)

[CLERK]:            Okay.  That's an error.  Juror Estes shouldn't be
                    there.  That's an error.

> [TRIAL COURT]:       All right.  Mr. Estes, you will be excused.  Thank you.
>
>       (Bench conference)
>
> [DEF'T COUNSEL]:     Your Honor, I'd like to make a record.  Because - -
>
> [TRIAL COURT]:       All right.  Just a minute.
>
> [. . .]
>
> All right, sir.
>
> [DEF'T COUNSEL]:     Your Honor, before the jury is sworn in, I would like to object to Number 38, the officer.  He has clearly stated that he is biased toward police officers, and it was an oversight.  When we were doing it, I thought he was on our list of agreed strikes.  I think it will result in an impartial jury [sic] that will be biased against my client and I move that we have a mistrial and that - -
>
> [TRIAL COURT]:       That will be overruled.  Let the record reflect that I called out the numbers that we agreed upon four different occasions, and he's never on my list as to be called up for cause or for any other reason he was not stricken, so it's overruled, counsel.

*Id.* at 97-99.  The winnowed jury was then sworn, and the remainder of the venire panel was excused.  The petit jury was taken to the jury room and Biagas was arraigned.  When the court completed Biagas' arraignment, but before the jury returned, the court *sua sponte* returned to the question of Deputy Gamboa:

> [TRIAL COURT]:       Let the record reflect agreed people on the jury were Number 2, Number 4, Number 13, Number 19, Number 42, and Number 50.  I granted challenges for 11, 17, 24, 25 and denied challenges on 30 and 40.  Nowhere was the 38 called up.
>
> [DEF'T COUNSEL]:     Your Honor, and I - - that was [an] oversight.  I thought he was one of the agreed, Your Honor.  And as I said, you know, we object to him being on the jury.  We think he would be - -
>
> [TRIAL COURT]:       I understand.

10 / 39

[DEF'T COUNSEL]:   - - biased and - -

[TRIAL COURT]:     That will be overruled.  Will be denied.

[DEF'T COUNSEL]:   Just so the record is clear, we do move for a mistrial.

[TRIAL COURT]:     Sir?

[DEF'T COUNSEL]:   So the record's clear, we move for a mistrial.  I didn't say that.

[TRIAL COURT]:     Yes, sir, will be denied.

*Id.* at 101.  The jury returned and the case proceeded to trial.  The state presented the testimony of two Harris County law enforcement officers: Captain Jesse Mack, who had been employed at Harris County Precinct Seven, and Captain Dan McAnulty, who was the lead investigator in the case.  Captain McAnulty was an investigator for the District Attorney's Office (and, coincidentally, was married to one of the prosecutors).

After he was convicted and sentenced, Biagas retained new counsel and filed a timely motion for a new trial.  The motion alleged both that Biagas was denied the opportunity to replace a biased juror and that Biagas was denied effective assistance of counsel when his trial counsel failed to properly challenge Gamboa.  In support of the motion, Biagas presented the affidavit of his trial attorney, who admitted that he had mistakenly believed Gamboa was on the agreed strike list and that he would have challenged Gamboa but for that mistake.  On July 21, 2003, after a hearing, the trial judge orally denied the motion without explanation.  That same day, the court signed a written order denying the motion without an opinion.  *See* Clerk's R. at 93.

Biagas appealed, raising several points including his biased juror and ineffective assistance claims, but the Texas Court of Appeals affirmed.  As to Biagas' biased juror claim, the court held first that denying his request for a mistrial was within the trial

court's discretion.  Though the court acknowledged that, "If a prospective juror states unequivocally that he would always believe a police officer in every case over an ordinary citizen, then that could be bias as a matter of law," the court held "the failure of defense counsel to raise a challenge for cause deprived the trial court of the ability to assess whether Juror # 38 was unequivocally biased." *Biagas*, 177 S.W.3d at 169.

## IV.

### A.

The Sixth Amendment to the federal Constitution requires, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an *impartial jury* of the State and district wherein the crime shall have been committed." United States Constitution amend VI (emphasis added).  The importance of the impartiality requirement cannot be overstated; even before the Supreme Court recognized that the Sixth amendment was incorporated against the states, the Court held that the Due Process clause of the Fourteenth amendment "independently required the impartiality of any jury empaneled to try a cause." *Morgan v. Illinois*, 504 U.S. 719, 726 (1992) (discussing *Duncan v. Louisiana*, 391 U.S. 145 (1968), *Turner v. Louisiana*, 379 U.S. 466 (1965), and *Irvin v. Dowd*, 366 U.S. 717 (1961)).  An impartial jury is the "surest means of protecting the accused against an unjust conviction," and the state must provide means of "securing juror impartiality in criminal cases. . . . Between [the accused] and the state, the scales are to be evenly held." *Hayes v. Missouri*, 120 U.S. 68, 70 (1887).

As stated by the Fifth Circuit Court of Appeals,

Our criminal justice system rests firmly on the proposition that before a person's liberty can be deprived, guilt must be found, beyond a reasonable doubt, by an impartial decision maker.  . . .

> The Supreme Court has unfailingly protected the jury room from juror bias in a variety of contexts . . . and this is consistent with the Court's long-held view that the impartial jury is *critical* in determining guilt and punishment.

*Virgil v. Dretke*, 446 F.3d 598, 605 (5th Cir. 2006) (emphasis added).   Given the importance of juror impartiality, our system of justice requires that counsel for the accused, the prosecution, and the trial court preserve and uphold this right.   The trial court cannot abdicate its responsibility to prevent or remedy circumstances that would compromise the integrity of a jury.   *Smith v. Phillips*, 455 U.S. 209, 217 (1982) ("Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.")

In order to satisfy this fundamental standard of impartiality, jurors must be able to "conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case."   *Lockhart v. McCree*, 476 U.S. 162, 184 (1986).   But where a potential juror's "views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath," then he is biased and he cannot constitutionally serve on a jury.   *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000) (quoting *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)).

There are two ways a party may establish that a juror is biased and thus incompetent to serve: implied bias and express bias.   In a "narrow range of cases," a juror's relationship to a party, the case, or some troubling event will raise such doubts about his ability to uphold his oath that he will be conclusively presumed biased as a matter of law.   *Solis v. Cockrell*, 342 F.3d 392, 395 (5th Cir. 2003).   If the circumstances surrounding the juror fall within the carefully watched limits of this doctrine, then the

juror cannot be rehabilitated.  If a juror is not impliedly biased, then express bias must be proven by the jurors own responses to questions and other evidence.  Biagas has established that Gamboa was biased under both theories.

**B.**

In some situations, a juror is so closely connected to one of the parties or to a case that the the law conclusively presumes that juror is biased and cannot serve.

> Some examples might include revelation that the juror is an actual employee of the prosecuting agency, that the juror was a witness or somehow involved in the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.  Whether or not the state proceedings result in a finding of 'no bias,' the Sixth Amendment right to an impartial jury should not allow a verdict to stand under such circumstances.

*Smith*, 455 U.S. at 222 (O'Connor, J., concurring); *see also Brooks v. Dretke*, 444 F.3d 328, 330 (5th Cir. 2006).

Though he was not actually employed by the District Attorney, Deputy Gamboa's employment with the Harris County Sheriff's Office qualifies as implied bias under Fifth Circuit precedent.  Harris County was the victim of Biagas' crime, and two Harris County law enforcement officers testified in the case in chief.  All of the evidence presented by the prosecution was developed by a Harris County criminal investigation, and Biagas' case was only a small part of a larger investigation into corruption at a Harris County Constable's office.  As Justice O'Connor's opinion in *Smith* indicates, a juror who is impliedly biased cannot serve as a juror even if the employee claims to be fair and impartial.

In the handful of cases in which the Fifth Circuit has applied the implied bias doctrine, the court has never considered a case like this one.  *See Solis*, 342 F.3d at 396. Here, the challenged juror was a full-time law enforcement officer in the County Sheriff's

office, and the prosecution relied on testimony from other law enforcement officers also employed by the county.  The implied bias doctrine does not apply merely because the juror holds an "official position as a member of the law enforcement community." *United States v. McCord*, 695 F.2d 823, 828 (5th Cir. 1983).  But the court "recognizes that someplace along the line we must know, no matter what a witness says, that he or she has an institutional bias he cannot overcome."  *United States v. Apodaca*, 666 F.2d 89, 94 (5th Cir. 1982).

The present case falls somewhere between the specific factual situations presented in *Apodaca*, where the court found no implied bias, and *United States v. Scott*, 854 F.2d 697 (5th Cir. 1988), where the court did find implied bias.  In *Apodaca*, the defendant had been charged with tax crimes and the case "had been initiated and prepared by the F.B.I." *Apodaca*, 666 F.2d at 93.  The defendant challenged a potential juror, Mrs. Eberle, who stated during voir dire:

> (1) that she had worked for the FBI; (2) that her husband (now retired) had worked for the FBI 30 years; (3) that she "knew how much investigation went into a case before presentment to a grand jury;" and (4) that if all things were equal, she might be human enough to give a little more credence to the prosecution based on this knowledge.

*Id.*  But during further examination, Mrs. Eberle also stated that

> she could set aside anything she remembered [about FBI investigation procedures] and base her decision on the evidence presented.  Mrs. Eberle responded that she would not resent any stringent cross-examination of FBI witnesses, that her frame of mind concerning the case was fair and impartial, and that she did not know either of the proposed FBI agent witnesses.

*Id.* at 94.  The trial judge denied the defendant's challenge for cause based on Mrs. Eberle's assurances that she could be fair and impartial.  The Fifth Circuit affirmed, but

suggested that Mrs. Eberle's institutional connection to the investigating agency was approaching a level where bias would be presumed:

> Allowing the defendant to challenge Mrs. Eberle for cause certainly would have been reasonable and prudent under the circumstances before us.  This court recognizes that some place along the line we must know, no matter what a witness says, that he or she has an institutional bias he cannot overcome.  However, in this limited circumstance, *in view of the fact that the proposed FBI witnesses did not appear before the jury*, coupled with Mrs. Eberle's response that she could be impartial, and viewing the overall voir dire, we are not prepared to say that the district court actually abused its discretion in denying the challenges for cause.

*Id.* (emphasis added).

But in the present case, one current and one former Harris County law enforcement officer actually testified in the government's case in chief.  And unlike Mrs. Eberle, who was a former F.B.I. employee, Deputy Gamboa was currently employed with the Harris County Sheriff's Office at the time of trial.  Captains Mack and McAnulty were current employees of other Harris County law enforcement subdivisions.  Indeed, Deputy Gamboa's relationship to the investigating agency was qualitatively different than the institutional relationships of jurors and potential jurors previously considered by the Fifth Circuit.[1]  With the exception of *Apodaca* and *Scott*, the court has not confronted a

---

[1] *See United States v. Richard*, 71 Fed.Appx. 294, 295 (5th Cir. 2003) ("supervisor of prisoners who participated in the Rapides Parish Sheriff's Department work release program . . . [but] not a deputy, law enforcement officer, or jailer"); *United States v. Munoz*, 15 F.3d 395, 396-98 (5th Cir. 1994) (father of two police officers, brother of retired chief of police, and brother-in-law of another chief of police; "none of the law enforcement agencies with which [the juror's] relatives were or had been affiliated were involved" with the case); *United States v. Bryant*, 991 F.2d 171, 174 (5th Cir. 1993) ("two prospective jurors who had close connections with law enforcement:" the wife of another city's chief of police and the retired "Chief Criminal Deputy Sheriff" of another parish); *United States  v. Ortiz*, 942 F.2d 903, 909 (5th Cir. 1991) (brother of a police officer in another city and cousin of two clerical employees of two different United States Attorneys Offices, including the prosecuting agency); *United States v. Wilson*, 732 F.2d 404, 410 (5th Cir. 1984) (juror with a "prior close affinity to law enforcement, through employment and marriage"); and *United States v. McCord*, 695 F.2d 823, 827-28 (5th

juror's connection to the investigating agency or to an actually-testifying law enforcement witness. Further, the court has not considered a juror who was serving as a full-time law enforcement officer at the trial; indeed, the court has recently suggested that this factor is significant. See *United States v. Richard*, 71 Fed. App'x. 294, 295 (5th Cir. 2003) (Juror was "not a deputy, law enforcement officer, or jailer."); *United States v. Munoz*, 15 F.3d 395, 396 (5th Cir. 1994) ("Neither [the juror] nor his wife were shown to be, or to have ever been, engaged in law enforcement.").

In *Scott*, the person eventually selected as jury foreman did not reveal during voir dire that his brother was a deputy sheriff and detective in the office that performed some of the investigation in the case. 854 F.2d at 698. The juror's relationship to the deputy did not come to light until after the trial was concluded, and once it was disclosed the defendant moved for a new trial. *Id.* The trial court denied the defendant's request based on the juror's testimony at a post-trial hearing that the juror did not believe his brother's employment would affect his judgment in the case. *Id.*

The Fifth Circuit reversed and remanded the case for a new trial. *Id.* at 701. The court recognized that the case presented "a combination of the two means of proving juror bias, a juror (1) with connection to the circumstances in the case (2) whose express explanation of his failure to disclose that connection creates a legal presumption of bias or an 'implied bias'." *Id.* at 699. In its opinion ordering a new trial, the court emphasized the juror's failure to disclose his relationship to the investigating agency, but that was because there was:

Cir. 1983) (four potential jurors: "an employee of the Department of Corrections . . . a volunteer member of the sheriff's flotilla (a type of natural emergency or disaster force) . . . a volunteer part-time deputy sheriff at another office and a retired reserve deputy sheriff.").

> no dispute that [the juror] Buras would have been challenged and excused for cause had he revealed that his brother was a deputy sheriff in the Jefferson Parish Sheriff's Office.  The dispute here, as the trial judge and the United States couched it, is whether Buras "failed to answer *honestly*."  At bottom, however, the issue is whether Buras was biased because of his relationship with his brother.

*Id.* at 698-99 (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556-57 (1984) (Blackmun, J., concurring)).  Though the court did not explicitly hold that the juror's relationship to the investigating agency alone was sufficient to constitute implied bias, both the trial court and the Fifth Circuit clearly assumed that the connection was sufficient grounds to excuse the juror without further inquiry.  *Id.* at 698 ("The trial judge further found that had the information been disclosed, he would have excused Buras for cause."); and *Id.* at 699 (finding "no dispute that Buras would have been challenged and excused for cause").

In the present case, Deputy Gamboa disclosed his relationship to the Harris County Sheriff's Office.  But given that the Fifth Circuit was confident that the juror in *Scott* would have been excused merely because his brother was a deputy in the investigating agency, it seems reasonable to conclude that an actual deputy in an agency closely related to the investigating agency should also be excused, without the need for further inquiry.  Here, this conclusion (that Gamboa was inherently, institutionally biased) is strengthened by the fact that Biagas was accused of theft accomplished by defrauding another Harris County law enforcement office.  As in *Scott*, and as discussed more fully below, Deputy Gamboa would have been excused if he had been challenged for cause in a timely fashion.

## C.

Even if Biagas had not established implied bias, Deputy Gamboa expressed actual bias through his responses to voir dire questions.  It is axiomatic that a juror's obligation to weigh the evidence in a criminal case requires the ability to impartially consider the credibility to be assigned to each of the state's witnesses.  Where, as here, the state relies on the testimony of law enforcement officers to prove its case against the defendant beyond a reasonable doubt, then a juror's preconceived notion that all law enforcement officers should be believed over any other witness "would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."  *Soria*, 207 F.3d at 242.  As such, the juror is biased and cannot constitutionally serve on a criminal jury.

The Texas Court of Criminal Appeals elucidated this principle in *Hernandez v. State*, 563 S.W.2d 947 (Tex. Crim. App. 1978).  After noting the general rule (applicable in both civil and criminal trials) that a juror's friendship with or affinity for a party's witness might constitute bias for or against a party, the court applied the rule to a criminal case where, as here, the juror expressed a pre-conceived belief that police officers were more believable than other witnesses:

> In the instant case, there is no doubt that venireman Abel's attitude toward police officers constituted a bias against the appellant.  Her voir dire examination revealed she believed a police officer would always tell the truth.  *When considering the fact that three of the four State's witnesses were police officers*, these responses become especially important.  A defendant is entitled to a juror who will impartially judge the credibility of the witnesses.  Venireman Abel's testimony revealed that her predisposition to believe police officers would have prevented her from impartially judging the credibility of those witnesses.  *Such responses effectively demonstrated bias against the appellant*.  Under the circumstances, we hold that appellant's challenge for cause was improperly overruled.

*Id.* at 950 (citations omitted, emphasis added).  Though the court in *Hernandez* was interpreting juror bias under the relevant Texas statute, the federal constitutional requirement of juror impartiality does not differ on this point.

In the present case, the trial judge recognized this principle, too.  The judge initially admonished the jurors that no witness was entitled to more credibility just because of their occupation, and four jurors were directly questioned during the initial open voir dire session about whether law enforcement officers should automatically be believed before they testified.  In response to the statements of Deputy Gamboa and another juror expressing affirmative answers, the trial judge instructed the venire panel, "Police officers are not entitled to any more belief than any person before they testify . . . if you really in your heart believe that they're entitled to more believability than any other person, then *you certainly should not sit on the jury*."  Rept. R. vol 3, p. 73 (emphasis added).  During the individual, in-chambers questioning of panel member Scott Lee Krumlauf, the court again confirmed its understanding that no juror should be allowed to serve if that juror would give or assign credibility to law enforcement witnesses merely because of their profession:

> [DEF'T COUNSEL]: Mr. Krumlauf, I believe when we were in the jury room there you said that if a police officer were to testify, we would start off a little behind?
>
> [KRUMLAUF]: Yes, sir.
>
> [DEF'T COUNSEL]: Okay.  You'd have more - - give more creditbility to the police officer?
>
> [KRUMLAUF]: Yes, sir.
>
> [DEF'T COUNSEL]: Okay.  I have no further questions, your Honor.
>
> [PROSECUTOR]: May I ask a question, Your Honor?

|  |  |
|---|---|
|  | Mr. Krumlauf, if - - are you telling us that you would automatically believe somebody before they ever took the witness stand and uttered a word if that person's profession was a police officer? |
| [KRUMLAUF]: | Given if after the testimony, given if it was an everyday person and an officer, the officer would win out. |
| [PROSECUTOR]: | So you wouldn't prejudge, you would listen to the testimony?  You know, it's okay to give somebody more credibility based on their experience, their training, their expertise in a certain area.  I think what we're trying to get at is, would you automatically believe somebody without hearing them utter a word just by virtue of their profession? |
| [KRUMLAUF]: | Yes, ma'am. |
| [PROSECUTOR]: | You would? |
| [KRUMLAUF]: | Yes, ma'am. |
| [PROSECUTOR]: | Okay. |
| [TRIAL COURT]: | Have a seat. |
| [DEF'T COUNSEL]: | Thank you, Mr. Krumlauf. |
| [KRUMLAUF]: | Uh-huh. |
| [TRIAL COURT]: | That [challenge for cause] will be granted, Number 11. |

Rept. R. vol 3, p. 82-84.

After further questioning of juror Lemer, who had also expressed a prior belief in

police officers' superior credibility, the trial court determined that she could permissibly

serve:

|  |  |
|---|---|
| [DEF'T COUNSEL]: | . . . I had asked you the question of whether if a police officer got on the stand you would automatically believe that police officer or something to that effect whether that police officer would start out ahead as far as my client and you believing that police officer? |

| | |
|---|---|
| [LEMER]: | Well, I said I have a brother who is a police officer and if a police officer got on the stand, swore to tell the truth and there was evidence, yes. I mean, if he got there so I would probably believe his evidence if there was evidence to back up what he said. I would not automatically believe a police officer because there are good police officers and there are bad police officers. |
| [TRIAL COURT]: | That's the question. If before a person testifies? |
| [LEMER]: | Oh, no, I would not. Not before he got up on the stand. I would have to hear what he had to say. |
| [TRIAL COURT]: | And then you would decide? |
| [LEMER]: | And then I would decide whether I would believe him or not. |
| [TRIAL COURT]: | All right. Have a seat. Thank you, ma'am. |
| | That [challenge for cause] will be denied. |

Rept. R. vol 3, p. 91-92.

In light of the entire voir dire process, and especially the court's rulings on the two defense challenges for cause of jurors Krumlauf and Lemer, it is clear that Deputy Gamboa never should have been allowed to sit on the panel that convicted Biagas. As stated previously, Gamboa was never actually challenged for cause. But during the initial voir dire session, he unequivocally stated that he would always believe a fellow officer over another witness.

Deputy Gamboa's explicit admission that he would not impartially weigh the credibility of the prosecution witnesses was tantamount to a refusal or expression of inability to uphold the juror's oath. Given this conclusive evidence of Gamboa's bias, it comes as no surprise that neither the trial court nor the state court of appeals found Gamboa to be impartial. Even so, both courts refused to grant any relief.

## D.

The law of juror bias, including the implied bias doctrine, is "clearly established Federal law as determined by the Supreme Court." *Brooks*, 444 F.3d at 329. (quoting § 2254(d)(1)). Therefore, "our question is whether the state court's decision was an objectively unreasonable application of the doctrine of [juror] bias." *Id.* at 332. This analysis is somewhat complicated because neither the state appellate court nor the trial court found that Gamboa was anything other than biased. The Court of Appeals provided two reasons for denying relief on Biagas' biased juror claim: first, Biagas moved for a mistrial, an extreme and "unwarranted" remedy, but "asked for no other relief - not to grant the challenge, or to reseat a different juror. He also did not request an additional peremptory strike;" second, Biagas' failure to include Gamboa in the list of jurors to be challenged for cause "deprived the trial court of the ability to assess whether [Gamboa] was unequivocally biased." *Biagas*, 177 S.W.3d at 168-69. The only reason ever given by the trial court was that Gamboa's number was never given as an agreed upon strike or a challenge for cause prior to jury selection.

The Texas Court of Appeals's reference to the standards governing a motion for mistrial is a straw man. Biagas argues here, as he argued in his motion for a new trial and his direct appeal, that the trial court erred when it denied him the opportunity to replace Gamboa. The trial court expressly invited objection by asking counsel whether he was "satisfied with the seating of the jury." Rept. R. vol 3, p. 95. Counsel immediately requested a sidebar conference and informed the court of his oversight. Before counsel requested a mistrial, and before he had an opportunity to request any other remedy, the trial judge said, "I'm sorry. I can't - - I can't do anything about it." *Id.* at 96.

At that moment, "[t]he record demonstrates that the jury had not been sworn, the panel from which the jury was selected was present, and the trial court could have acted within its discretion in considering or granting a challenge for cause, or its equivalent, had such lesser relief been requested." *Biagas*, 177 S.W.3d at 169.  Immediately after the trial court claimed an inability to entertain any request for relief, the parties were informed that an extra juror had been called to the jury box.  The court allowed the clerk to decide which of the thirteen selected jurors should be excused; clearly, there was no pressing need to have the jury sworn and seated immediately.  The other members of the panel were still waiting in the courtroom.

The only reason ever given by the trial judge for refusing to consider the objection to Gamboa was Biagas' failure to raise the challenge when the other challenges for cause were submitted.  The court said it was denying Biagas' request for a mistrial because it "called out the numbers that we agreed upon four different occasions, and he's never on my list as to be called up for cause or for any other reason he was not stricken, so it's overruled, counsel."  Rept. R. vol 3, p. 99.  In fact, the trial court never called out the names of the agreed-upon strikes on the record.  It is not clear who prepared the written list of agreed upon strikes, though both the prosecutor and counsel agreed that the list accurately represented the agreements.[2]  The record reveals that each time the parties or the court recited the list of jurors stricken by agreement or challenged for cause, there was an error or oversight.  This confusion persisted up to the moment Juror Estes was excused.

---

[2] The record does not reveal who prepared the list.  It is not clear from the record whether counsel and the prosecutor actually agreed to strike Gamboa, but left him off the list, or whether they never reached an agreement at all.

But even if the trial court had announced the list of agreed strikes five times, without error or emendation, Biagas' attorney's uncontradicted affidavit states that he mistakenly believed that the deputy was on the list.  He was mistaken, but given the manifest confusion, the preliminary stage of the empanelling process, and especially given the fact that an extra juror had been selected, there was no reason for the trial court to refuse Biagas' challenge to Gamboa.   The federal constitution requires a judge presiding over a criminal trial to be "ever watchful to prevent" juror bias.  *Smith*, 455 U.S. at 217.  That did not happen here.

### E.

Under certain limited circumstances, a party's failure to challenge a juror before the panel is seated and sworn constitutes a waiver of the objection.  In *Dawson v. Wal-Mart Stores*, 978 F.2d 205, 208-09 (5th Cir. 1992), the Fifth Circuit held that a civil plaintiff waived his right to challenge jurors' impartiality because he knew the facts allegedly proving bias and chose not to challenge the jurors:

> Dawson asserts that three members of the jury panel had a close relationship with defense counsel and were therefore unable to render an impartial verdict.  However, Dawson's counsel did not challenge any of the three persons for cause, nor did he use any of his peremptory challenges to strike them.  The trial transcript reveals that Dawson was given a fair opportunity to question each juror on voir dire and to remove them from the venire, but that he chose to exercise his challenges on others.  When the basis for challenge to a juror is timely shown, the failure to object constitutes a waiver of the right to attack the composition of the jury.

*Id.* at 208-09 (citing *United States v. Reis*, 788 F.2d 54, 59 (1st Cir. 1986) and *United States v. Diaz-Albertini*, 772 F.2d 654, 657 (10th Cir. 1985)).  The court had previously indicated that a criminal defendant was on "dubious procedural footing" when he tried to challenge juror's impartiality on appeal after failing to make a record at trial:

> Wright's counsel failed alike to exercise any peremptory challenges, to request any correcting instructions, or to examine the jurors in question on voir dire . . . .   The function of voir dire examination of and challenges to prospective jurors is to raise alleged bias 'from the realm of speculation to the realm of fact'. Failure to conduct voir dire examination or at least request it, and to exercise challenges, peremptory and for cause, leave actual bias undetermined, and leave the trial court wide discretion to deal with questions of implied bias.

*United States v. Benson*, 495 F.2d 475, 482 (5th Cir. 1974).  Ultimately, the court chose to decide the case on its merits rather than this procedural ground.  *Id.*  A complete failure to request voir dire or to employ any challenges during the trial is not like an inadvertent failure to ensure that a biased juror was challenged, especially where an objection was made to the trial court as soon as the mistake was discovered and when the court retained the ability to replace the juror with no prejudice to the prosecution.  Mere failure to challenge a juror who has unambiguously asserted his bias, when immediately followed by an objection before the jury is sworn, is not sufficient to constitute a waiver in a criminal case, where the right to an impartial jury is guaranteed by the Sixth Amendment. Those criminal cases that do employ waiver or procedural bar analyses to juror challenges involve objections other than bias.[3]

But when the objection to a juror relates "to actual prejudice or other fundamental incompetence" (*Ford*, 201 F.2d at 301), then waiver occurs (if at all) only if the defendant knowingly, intelligently, and voluntarily accepts the biased juror.  *C.f. Cardenas v. Dretke*, 405 F.3d 244, 249 (5th Cir. 2005) (Failure to object to *exclusion* of

---

[3] See *Ford v. United States*, 201 F.2d 300, 301 (5th Cir. 1953) ("Where the objection to a juror relates, *not to actual prejudice or other fundamental incompetence*, but to a statutory disqualification only, such disqualification is ordinarily waived by failure to assert it until after verdict.") (emphasis added).  *C.f.  Davis v. United States*, 411 U.S. 233 (1973) (discrimination in selection of grand jurors); *Queenan v. Territory of Oklahoma*, 190 U.S. 548, 551-52 (1903) (juror's ineligibility due to a felony conviction); *Kohl v. Lehlback*, 160 U.S. 293, 299-303 (1895) (juror was an alien); *Marlin v. Florida*, 489 F.2d 702, 702-03 (5th Cir. 1974) (improper selection of venire panel.).

jurors, as well as affirmative "remarks agreeing with the prosecution's challenges in several cases," prevented assertion of wrongful-exclusion claims on appeal).   That certainly did not occur here.  In all cases, a trial judge should exercise his discretion in a way calculated to "ferret out" the taint of juror bias.  *See, e.g.*, *United States v. Collins*, 972 F.2d 1385, 1400 n.2 (noting that the purpose of voir dire is to "ferret out" juror bias); *accord*, *United States v. Corey*, 625 F.2d 704, 707 (5th Cir. 1980) ("Once a party has raised the spectre of potential actual prejudice, specific and direct questioning is necessary to ferret out those jurors who would not be impartial.").   Failure to do so without reasonable justification is constitutional error and objectively unreasonable.

Here, the trial judge refused to remove Gamboa, and the only reason given was Biagas' failure to file a challenge within the allotted time for challenges for cause or peremptory strikes.   But given the importance of the impartial jury right, the clear institutional and express bias of Gamboa, and the preliminary stage of the proceedings (the venire panel was still in the courtroom and the jury had not been sworn), this reason does not withstand constitutional scrutiny.   "It is clearly established that the Supreme Court views the denial of the right to an impartial decisionmaker to be such an error that taints any resulting conviction with constitutional infirmity." *Virgil*, 446 F.3d at 607.  The "ultimate legal conclusion" reached by the state courts, that Biagas' conviction was constitutionally sound notwithstanding the trial judge's unjustified refusal to replace a biased juror, was objectively unreasonable.   Therefore, relief under § 2254(d) is appropriate.

## V.

Biagas' petition does not rest on his biased juror claim alone.  He also argues that he was denied effective assistance of counsel when his trial defense attorney failed to

include Deputy Gamboa on the list of agreed strikes or challenges for cause.  The analysis of this claim is largely controlled by the recent Fifth Circuit case *Virgil v. Dretke*, in which the court held that habeas relief was warranted because the trial defense counsel "fail[ed] to use a peremptory or for-cause challenge in response to the testimony of jurors . . . that unequivocally expressed bias against [the defendant]."  *Id.* at 614. Because the respondent's attempts to distinguish *Virgil* are unsuccessful, habeas relief under § 2254(d) is independently warranted under this claim.  Indeed, this claim would succeed even if the state court's correctly (or reasonably) concluded that Biagas' objection to Gamboa were waived or barred by counsel's mistake, Biagas would be entitled to habeas relief for ineffective assistance.

Because the state courts denied Biagas' ineffective assistance claim on its merits, he must show that the state court decision was either objectively unreasonable application of federal law.  The importance and fundamental nature of the right to an impartial jury is a "guidepost" to be used in determining whether the state court application of the ineffective assistance doctrine was "objectively unreasonable." *Virgil*, 446 F.3d at 607. To evaluate Biagas' ineffective assistance claim, the Court must "examine counsel's performance in this case" and apply the "familiar two-part test from *Strickland v. Washington*: deficient performance and prejudice." *Id.* at 607-08; *see Strickland v. Washington*, 466 U.S. 668, 687 (1984).

### A.

To prove deficient performance under *Strickland*, "[A] petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.'"  We give substantial deference to counsel's performance, "applying the strong presumption that counsel performed adequately and exercised reasonable professional judgment."  Because we must make every effort "'to eliminate the distorting effects of hindsight,'" a "conscious and informed decision on trial tactics and strategy cannot be

the basis for constitutionally ineffective assistance of counsel unless it is
so ill chosen that it permeates the entire trial with obvious unfairness."

*Virgil*, 446 F.3d at 608 (citations omitted).  Counsel fell below an objective standard for

reasonableness when he failed to challenge a biased juror at the appropriate time.  As

counsel stated in his post-trial affidavit:

> In light of [Gamboa's voir dire] responses, I felt that he was a
> biased juror subject to my challenge for cause.  I mistakenly believed that
> Gamboa was among those jurors whom both sides had agreed to excuse by
> agreement and did not object when the judge called out the numbers of
> those jurors who were either being challenge[d] for cause or who were
> being excused by agreement.  I did not ensure that my strike list correctly
> showed that Gamboa was one of those jurors whom both sides had agreed
> to excuse.  It was only when Gamboa's name was called as a juror that I
> realized that I had made a mistake.  Although I told the judge that Gamboa
> had been seated as a result of my oversight, I did not ask for an additional
> peremptory challenge to remove Gamboa or ask that I be permitted to
> retroactively change the use of one of my ten peremptory challenges to
> remove him.

Clerk's Record at 195.

## 1.

If an attorney does not challenge jurors who expressly concede bias against the

defendant, his performance is objectively deficient.  *Virgil*, 446 F.3d at 609-11.  In *Virgil*,

the defendant's attorney failed to challenge five jurors who had given answers that would

raise doubts about their impartiality.  Three jurors "testified, with merely a single 'no'

answer, that they could not fairly consider the testimony of a person with a prior

conviction."  *Id.* at 608.  The Fifth Circuit did not find the attorney's failure to challenge

those jurors objectively deficient, in part because their response only indicated in context

that "as between a witness with a prior conviction and a witness without, [the jurors

were] *more likely* to believe the witness without a prior conviction."  *Id.* at 608-09

(emphasis added).  But two other jurors went even further; they expressed not merely a

tendency to believe one type of witness over another, but actual prejudice and partiality. *Id.* at 603-604, 609-611.   The attorney's failure to challenge those jurors was constitutionally deficient.  *Id.* at 611.

Deputy Gamboa admitted that he would be "partial" when asked whether the defense would start "a little behind" in his deliberations.  Rept. R. vol. 3, pp. 71-72. Unlike the first three jurors discussed in *Virgil*, he did not express a mere tendency to believe or disbelieve one type of witness; Gamboa stated an inability to believe that a prosecution witness could misrepresent anything.   When asked "*No matter what transpired* . . . if [the detective] comes in here and says, Lance Biagas did X, Y, Z, *you're going to believe him over Lance Biagas or anybody else* that comes and testifies?", Deputy Gamboa responded, "I'm going to be partial.  . . . I'm going to believe him." Rept. R. at vol 3, pp. 71-72.

## 2.

Unlike the situation presented in *Virgil*, this Court does not have to speculate about "counsel's perspective at the time" of the challenged conduct.  *Virgil*, 446 F.3d at 601-02 (quoting *Strickland*, 466 U.S. 668, 689).  In *Virgil*, the defendant's trial counsel attempted to defend his performance by submitting an affidavit stating that he "struck all persons whom [he] thought had some type of bias, prejudice or issue based upon [his voir dire]." *Id.* at 610.  The Fifth Circuit found this "conclusory" affidavit lacking because it did not explain why counsel failed to challenge the jurors for cause, and because it failed to explain a reason for keeping them on the jury given their express bias.  *Id.* at 610.

Here, Biagas' trial attorney has made no attempt to rehabilitate his own performance.  His uncontradicted affidavit admitted, contrary to his own interest, that he not only believed that Gamboa was objectionable and biased, but that he mistakenly

believed that Gamboa had been removed.  He "simply made a mistake."  As soon as he realized that he was wrong, he admitted that he made an "oversight."  Because of his oversight, he not only failed to challenge Gamboa for cause, but also expended all of his peremptory strikes on other jurors.  When he realized his error, the only way to preserve Biagas' right to an impartial jury was to raise an objection to the seating of the jury.  Counsel's constitutionally deficient performance was only compounded by his failure to request a specific remedy other than a mistrial.

The affidavit, if true, overcomes the "strong presumption that counsel performed adequately and exercised reasonable professional judgment." *Virgil*, 446 F.3d at 608 (quoting *Titsworth v. Dretke,* 401 F.3d 301, 310 (5th Cir.2005)).  No one disputes this.  But despite the uncontradicted evidence (and the obvious inference) that counsel's failure to challenge Gamboa was a mistake, rather than a purposeful choice, the Texas Court of Appeals decided (or, more precisely, concluded that the trial court might have decided) that counsel made a strategic decision to allow Gamboa's selection:

> Jury selection, in particular, involves strategy.  This case involves a theft within the constable's office, allegedly organized by a constable's employee.  [Gamboa], who was not challenged, is a peace officer.  Defense counsel's affidavit concludes that his decision was a mistake, but the trial judge who oversaw voir dire was in a position to evaluate whether trial counsel's statement was credible.  The trial judge could have found otherwise, given the agreement as to six other jurors, as well as the fact that trial counsel did not ask for further examination of the juror, to reseat a different juror, or for an additional peremptory strike-even after he discovered his error. . . . [W]e defer to the trial court's ruling.  Biagas fails to demonstrate that no reasonable view of the record supports the trial court's ruling, because the trial court could have concluded that trial counsel's affidavit was not credible.

*Biagas*, 177 S.W. 3d at 171-72.  Neither the trial court nor the Court of Appeals actually found, as a matter of fact, that counsel's failure was trial strategy.  As stated previously, the only reason ever given by the trial judge for his failure to grant relief was Biagas'

failure to raise the objection during the time the other challenges for cause were submitted. The trial court did not give any written or oral statement of reasons for denying the motion for a new trial. The Court of Appeals presumed that the trial judge denied the ineffective assistance claim because he disbelieved the affidavit, then deferred to this presumed ruling.

Clearly, based on the record, counsel failure to challenge Gamboa was not the result of a "conscious and informed decision on trial tactics and strategy." *Virgil*, 446 F.3d at 608 (quoting *Johnson v. Dretke,* 394 F.3d 332, 337 (5th Cir.2004)). The contrary state decision either "was based on an unreasonable determination of the facts in light of the evidence presented," or else "was contrary to, or involved an unreasonable determination of, clearly established federal law." § 2254(d). Counsel questioned the entire venire panel about potential bias in favor of law enforcement testimony, and challenged two jurors for cause based on their responses. As soon as the original thirteen-member jury panel was selected, counsel called the trial judge's attention to the oversight and continued to press the issue after he was initially rebuffed. It even appears that the "extra" juror, Estes, had been peremptorily stricken by counsel. *See* Clerk's R. at 110 (counsel's strike list). But when he saw who had been selected, he did not mention Estes; instead, he objected to Gamboa. Counsel's actions belie the notion that he secretly or overtly wanted Gamboa to be selected.

With no indication from the trial court that it actually drew this tenuous inference, and given counsel's uncontradicted admission (contrary to his own interest) that he made a mistake, it would be unreasonable to conclude that he was lying and that he actually intended to allow Gamboa to be selected on the panel. Even if one of the state courts had

affirmatively determined (rather than presuming that another court had concluded) that counsel deliberately failed to challenge Gamboa, that determination would be unsupportable on this record.  If the state courts' decision in this case rests on the assumption that counsel's admitted mistake was reasonable trial strategy, then that decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  §2254(d)(2).

**3**

Even if this Court could countenance the unreasonable factual determination that counsel was behaving deliberately, that would not legally defeat Gamboa's claim of ineffective assistance.  Under *Virgil*, the Fifth Circuit would require an explanation for why Gamboa was not challenged despite his admission that he would believe the prosecution's law enforcement witnesses under any circumstances.  *Virgil*, 446 F.3d at 610 ("Moreover, defense counsel's conclusory affidavit . . . fails to rehabilitate his performance, as it lacks any suggestion of a trial strategy for not using peremptory or for-cause challenges against [the potentially biased jurors].")  Obviously, no explanation appears in this record.  As in *Virgil*, the respondent's "after-the-fact justifications" for allowing Gamboa to be selected have "little relevance to our inquiry, and counsel's action in response to other venirepersons illustrates why."  *Virgil*, 446 F.3d at 610.

Given Gamboa's expressed (and institutional) bias in favor of the prosecution's evidence and, thus, his bias against Biagas, there was no reason to believe that his presence would help or aid the defense.  Counsel recognized as much when he challenged the other potential jurors who had expressed bias or potential bias in favor of law enforcement testimony.  Undaunted, the respondent has supplemented and defended the Texas Court of Appeals's hypothesis by submitting two possible objectives that counsel

might have sought through his purposeful failure to challenge Gamboa.  Both arguments are non-starters.

First, the respondent surmises that counsel might have been "seeking jury nullification from jurors (like Gamboa) who may have had a personal or professional empathy with Biagas."  Any attempt to reconstruct a strategic reason for counsel's "decision" would be fantastic at best, but this argument never rises out of the mire of absurdity.  The respondent suggests that counsel purposefully chose not to challenge Gamboa, who had admitted his bias against the defendant, because his "personal or professional empathy with" the same defendant would advance counsel's strategy to seek juror nullification.  The respondent does not attempt to explain why counsel raised an objection when the biased yet "empathetic" Gamboa was actually selected.  And counsel not only objected, (so goes the argument), but deceptively claimed that he thought that Gamboa had been previously excused, argued that he was biased, and moved for a mistrial.  Ironically, the respondent concocted this strategy to establish that counsel's conduct was objectively reasonable.  Even if the record supported (rather than contradicted) the mind-boggling inference that counsel deliberately chose this irrational, Janus-faced voir dire strategy, such a "performance" could never satisfy the constitutional guarantee of effective assistance of counsel.  Gamboa's claim would not be defeated.

Second, the respondent argues that counsel did not challenge Gamboa because he was "laying a predicate for appeal and retrial by laying behind the log until an objection was too late."  This Court will not accept the respondent's invitation to impute such devious and unsavory motives to counsel without any supporting evidence.  Again, even if the respondent's theory was true, counsel's performance would not be objectively

reasonable because it would involve risking Biagas' fundamental right to a trial by an impartial jury for no reasonable benefit.  Neither of the fictional motives put forward by the respondent would be satisfactory under *Strickland* and *Virgil*.  Counsel's mistaken failure to challenge Gamboa was objectively deficient, and the respondent's ad-hoc attempts to rehabilitate his performance are legally and factually unavailing.

## B.

The second prong of the *Strickland* inquiry is satisfied because counsel failed to challenge Gamboa despite his answers expressing bias against the defendant.  "Given the fundamental nature of the impartial jury and the consistent line of Supreme Court precedent enforcing it," such a failure was a "'breakdown in the adversarial process that our system counts on to produce just results.'"   *Virgil*, 446 F.3d at 613 (quoting *Strickland*, 466 U.S. at 696).  The reasoning from *Virgil* applies with equal force in the present case:

> Such an unreliable result dictates the conclusion that Virgil's defense was prejudiced under *Strickland* by the sitting of [the biased jurors], as each unequivocally expressed that they could not sit as fair and impartial jurors, and the state court's decision to the contrary cannot stand.  As we stated in *United States v. Nell,* "The jury box is a holy place."  Our criminal justice system is predicated on the notion that those accused of criminal offenses are innocent until proven guilty and are entitled to a jury of persons willing and able to consider fairly the evidence presented in order to reach a determination of guilt or innocence.   Virgil was denied these basic principles when two jurors expressed their inability to serve fairly and impartially in his case.

*Id.* (quoting *United States v. Nell*, 526 F.2d 1223, 1229 (5th Cir.1976)).  The Texas Court of Appeals held that Biagas did not establish prejudice because

> Biagas has not shown that a different outcome would have resulted from more effective representation.  Biagas claims automatic harm from the presence of a biased juror on the jury, but we cannot reach such a conclusion here, where the juror was not sufficiently questioned to determine whether he absolutely should have been excused for cause,

> because no challenge was ever made, and counsel never sought to further
> examine the juror.

*Biagas*, 177 S.W.3d at 172.  On the record before this Court, no one could reasonably conclude that Gamboa had not been sufficiently questioned.  As explained previously, Gamboa's answers in voir dire were sufficient to establish his bias without further inquiry, especially in light of his institutional affiliation with the investigating agency and the law enforcement witnesses.  But under *Virgil*, counsel's failure to further "explore the depth or intensity" of Gamboa's bias through additional questioning actually supports the conclusion that Biagas' defense was prejudiced.  *Virgil*, 446 F.3d at 613.  Because no juror is allowed to testify about the deliberations, no one will ever know whether or to what extent Gamboa's inability (or unwillingness) to question the testimony of the prosecution's law enforcement witnesses affected the other jurors.

The respondent has attempted to distinguish *Virgil* by arguing that Gamboa did not express a "global statement of partiality against Biagas himself, only an expression of belief in police officer testimony."  The argument continues: "[T]his alleged bias never came into play: the jury was not actually called upon to consider the credibility of the police officer witnesses - they were asked by the defense to consider Biagas' youth and lack of intent."  But this argument misconstrues the oath and obligation of a juror as well as the prosecution's burden in a criminal case.  The quality of the prosecution's evidence, including witnesses' credibility, is always an issue.  Even though counsel did not attack the credibility of the law enforcement witnesses in his closing statement, Gamboa's expressed bias in favor of the government witness contradicted our system's "assumption that the decisionmaker is reasonably, conscientiously, and *impartially* applying the

standards that govern the decision." *Virgil*, 446 F.3d at 612 (quoting Strickland, 466 U.S. at 695, emphasis added in *Virgil*).

The respondent also argues that the prosecution was based on documents, not testimony. Apparently, the respondent would have this Court deny relief to Biagas because the state admitted (over counsel's objection) the transcript or recording of two statements Biagas made prior to trial. Those statements tended to establish his guilt. But no defendant loses his right to an impartial jury merely because the state has amassed some magic quantum of persuasive evidence against him. And when a juror who is actually biased is allowed to serve only because the defendant's attorney forgot to challenge him, or removed another juror mistakenly believing he had removed the biased juror, then such an error is prejudicial under *Strickland* and *Virgil*. *Strickland* is a process-based inquiry.

There would be little need to belabor this obvious point if it had not been ignored by the entire state court system and denied by the respondent: the federal Constitution does not allow a criminal defendant to be convicted by a jury if one of the jurors says, before the trial, he will believe the prosecution's evidence. Counsel recognized this, because he asked multiple jurors about whether their pre-existing relationships with law enforcement officers would affect their ability to be impartial. The trial court recognized this and excluded juror Krumlauf, who, like Gamboa, expressed unambiguous bias in favor of police officer witnesses. When counsel's challenge of juror Lemer for cause was denied, he used a peremptory strike against her. However, because of counsel's mistaken belief that Gamboa had already been removed, he failed to challenge him at the most appropriate time.

Further, the respondent's myopic comparison of Gamboa's responses and the issues argued to the jury fails to take account of his employment as a Harris County Sheriff's deputy.  "*Strickland*'s prejudice inquiry is process-based:  Given counsel's deficient performance, do we have confidence in the process afforded the criminally accused?"  *Virgil*, 446 F.3d at 612.  That confidence is missing here because Biagas was convicted for his role in a scheme to defraud Harris County, and the scheme involved a Harris County Constable's employees.  Two Harris County law enforcement officers were called by the Harris County District Attorney's Office to prove Biagas' guilt, and every other piece of the prosecution's evidence was generated by the Harris County investigation.  When asked whether the defense would start "a little behind," Gamboa openly admitted that he would be partial.  No court would allow such a juror to serve if properly challenged.  "By law," Biagas was prejudiced by Gamboa's service on the jury that convicted him, and

> the state court's decision to the contrary [was] an unreasonable application of clearly established Federal law as determined by the Supreme Court. Expressed in *Strickland* terms, the deficient performance of counsel denied [Biagas] an impartial jury, leaving him with one that could not constitutionally convict, perforce establishing *Strickland* prejudice with its focus upon reliability."

*Virgil*, 446 F.3d at 613-14.  Biagas has proven that the state court's evaluation of his ineffective assistance claim was an objectively unreasonable application of federal law. Therefore, he is independently entitled to habeas corpus relief for ineffective assistance of counsel.

## VI.

Gamboa has proven that he is in custody in violation of the laws of the United States, and that the state court decision holding otherwise was objectively unreasonable. Therefore, he is entitled to a writ of habeas corpus. For the reasons stated above,

1. Biagas' petition for a writ of habeas corpus is GRANTED;

2. the respondent's Motion for Summary Judgment is DENIED; and

3. the respondent is ORDERED to release Biagas unless the State of Texas grants him a new trial within 30 days of the entry of this order. If an appeal of this order is filed, the 30 day period will not begin to run until the appeal is dismissed or is otherwise terminated.

It is so ORDERED.

Signed this 23rd day of April, 2007.

Kenneth M. Hoyt
United States District Judge